**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF COLORADO**

| | |
|---|---|
| Kendra Anderson, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-00500 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Hain Celestial Group, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Hain Celestial Group, Inc. ("defendant") manufactures, distributes, labels and sells baby food products in numerous forms, i.e., pouches, purees, snacks, etc., under its Earth's Best Organic brand, which consist mainly of rice and other ingredients. ("Products").

I.   The Products are Intended for Developing Children

2.      Parents trust manufacturers like defendant to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

3.      They expect the food they feed their infants and toddlers to be free from heavy metals, substances known to have significant and dangerous health consequences.

4.      However, consumers lack the scientific knowledge necessary to determine whether the products fact contain heavy metals, relying on defendant to truthfully disclose whether their products pose a potential risk to children.

5.      A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, reveals that Defendant has violated the trust of this nation's parents.

6.      The Subcommittee's investigation was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development."

7.      The report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and… that the manufacturers have often sold foods that exceeded these levels."

8.      The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[1]

9.      These four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as the "permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[2]

10.      Even in trace amounts, these heavy metals can alter the developing brain and erode a child's IQ and increase risk of future criminal and antisocial behavior in children.[3]

II.  Defendant's Representations Affirm their Products' Suitability for Small Children

11.      Defendant's front and back labels tout its health attributes, through the following:[4]

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[2] Healthy Babies Bright Futures Report, at 6.
[3] *Id*.
[4] This product is an example of the numerous, similarly labeled products which are believed to contain high levels of heavy metals.



12.   The relevant front label representations of an exemplar product include pictures of fresh raspberries, bananas and rice, "Earth's Best Organic," "Organic Banana Raspberry & Brown Rice," "Fruit & Grain Puree," "Non-GMO Project Verified" and "USDA Organic."

13.   The ingredient list gives consumers no cause for concern:

**INGREDIENTS:** ORGANIC BANANA PUREE, WATER, ORGANIC RASPBERRY PUREE, ORGANIC BROWN RICE FLOUR, CITRIC ACID (VITAMIN C).

**INGREDIENTS:** ORGANIC BANANAS, WATER, ORGANIC RASPBERRY, ORGANIC WHOLE GRAIN BROWN RICE FLOUR, CITRIC ACID.

3

14.     However, nowhere in the labeling, advertising, statements, warranties, and/or packaging does defendant disclose that the Product contains significant, non-trace levels of arsenic, mercury, lead, cadmium, and perchlorate[5] – all known to pose health risks to humans and especially infants.

A.  Arsenic

15.     When children are exposed to arsenic early in life, it causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[6]

16.     Arsenic exposure also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system."[7]

17.     The FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic and is also considering limiting the action level or arsenic in rice cereal for infants to 100 ppb.[8]

18.     The FDA has set 100 ppb inorganic arsenic as the limit in infant rice cereal, though Defendant's internal standard is 15% higher than the FDA limit, at 115 ppb.

19.     Defendant sold baby food products with as much as 129 ppb inorganic arsenic.

20.     Documents show that Hain used ingredients testing as high as 309 ppb arsenic.

21.     In all baby food products tested by defendant, inorganic arsenic levels were higher

---

[5] Healthy Babies Bright Future, What's In My Baby's Food?, What's In My Baby's Food?, (January 10, 2021).
[6] *Id.*
[7] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013) (online at https://pubmed.ncbi.nlm.nih.gov/23570911/)).
[8] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr.2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM49315 2.pdf.

than estimated based on individual ingredient testing.

22.    Inorganic arsenic was between 28% and 93% more in the finished products than it was in the ingredients.

23.    Half of Defendant's brown rice baby foods had over 100 ppb inorganic arsenic; and the average brown rice baby food had 97.62 ppb inorganic arsenic.

B.  Lead

24.    Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed development, and reduced postnatal growth."[9]

25.    Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults.

26.    In children, low levels of lead exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[10]

27.    EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is toxic metal that can be harmful to human health even at low exposure levels.

28.    Lead can bioaccumulate in the body over time, leading to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.[11]

29.    The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children.

---

[9] House Report, at 11.
[10] See https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.
[11] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinkingwater.

30.    Defendant used ingredients with up to 352 ppb lead.

31.    Defendant's ingredients had high lead content.

32.    88 products were determined to have more than 20 ppb lead while six had greater than 200 ppb lead.

C.  Mercury

33.    Mercury increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero.

34.    Mercury has been linked to higher risk of lower IQ scores and intellectual disability.

35.    The FDA has set a maximum mercury level in drinking water to 2 ppb.

36.    Defendant does not even test for mercury.

D.  Cadmium

37.    Cadmium is linked to neurotoxicity, anemia, liver disease, cancer, and kidney, bone, and heart damage.

38.    Health and environmental regulatory bodies have set maximum cadmium levels in drinking water to 3 and 5 ppb.

39.    Defendant used 102 ingredients in its baby foods that tested over 20 ppb cadmium. Some tested much higher, up to 260 ppb cadmium.

III. Defendant's Standards Permit Dangerously High Levels of Toxic Heavy Metals

40.    Defendant's internal company standards permit dangerously high levels of toxic heavy metals.

41.    Though Defendant conducts some testing for these substances, the products are sold to consumers regardless of the level of heavy metals they contain.

6

42.   Defendant's internal standard for arsenic, lead, and cadmium in some of its ingredients is 200 ppb, higher than is considered safe for small children.

43.   However, Defendant failed to abide by its internal policies, and used ingredients containing 353 ppb lead and 309 ppb arsenic.

44.   Defendant rationalized the high level of heavy metals in its products as "theoretical calculations," even though it knew – since at least August 2019 – that it underestimated final product toxic heavy metal levels.

45.   It is believed that Defendant is also adding ingredients with already high levels of toxic heavy metals, like vitamin/mineral pre-mix.

46.   Defendant only tested its ingredients, not finished products.

47.   Defendant knows that its customers trust the quality of its products and that they expect defendant's products to be free of heavy metals.

48.   It also knows that all consumers seek out and wish to purchase baby foods that will not cause harm or risk of harm, and that assurances of quality induces purchasers to pay more than they otherwise would.

49.   No reasonable consumer seeing defendant's marketing would expect the contaminated baby foods to contain heavy metals or other undesirable toxins or contaminants.

50.   Reasonable consumers, like plaintiff, would consider heavy metals at non-trace levels a material fact when considering what baby food to purchase.

51.   Defendant knows consumers value assurances the products they buy do not contain certain ingredients and/or components.

Defendant's marketing tells consumers the positive attributes of its Products:

- At Earth's Best Organic brand, we take great care in every step of the baby food

     process to bring you THE BEST FROM THE EARTH

- Made with wholesome ingredients from our family of certified organic farmers

- Certified USDA Organic products

- Excellent source of vitamin C

- Kosher

52.    Defendant also assures consumers its Products it will not contain other ingredients and/or components:

- No GMO ingredients

- No artificial flavors, colors or preservatives

- Non-BPA packaging

- No wheat and no added salt or sugar

- No artificial flavors, colors, preservatives, growth hormones, antibiotics, steroids or potentially harmful pesticides or herbicides

53.    Since Defendant knows consumers dislike the items listed, it is expected they also know consumers will dislike heavy metals at non-trace levels in the Products, which have harmful effects on children.

54.    Defendant misrepresented the Products through affirmative statements, half-truths, and omissions.

55.    Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

56.    Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

8

57.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $1.49 for pouches of 4.2 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Delayed Discovery

58.    Plaintiff and consumers would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to disclose material facts.

59.    Furthermore, Defendant's labeling practices and nondisclosures impeded Plaintiff's abilities to discover the deceptive and unlawful labeling throughout the Class Period.

Jurisdiction and Venue

60.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

61.    Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

62.    Plaintiff Kendra Anderson is a citizen of Colorado.

63.    Defendant The Hain Celestial Group, Inc. is a Delaware corporation with a principal place of business in Lake Success, Nassau County, New York.

64.    Diversity exists because plaintiff Kendra Anderson and Defendant are citizens of different states.

65.    Upon information and belief, sales of the Products and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive

of interest and costs.

66.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

67.    Venue is further supported because many class members reside in this District.

Parties

68.    Plaintiff Kendra Anderson is a citizen of Aurora, Arapahoe County, Colorado.

69.    Defendant The Hain Celestial Group, Inc. is a Delaware corporation with a principal place of business in Lake Success, New York, Nassau County.

70.    Defendant's Earth's Best Organic is a leading baby food brand.

71.    The use of the word "Organic" in the brand name is a representation a product will not contain pesticides and GMOs.

72.    Though "Earth's Best" may be puffery, it still is understood as giving assurances to consumers its Products will not contain dangerous levels of heavy metals.

73.    It is reasonable for consumers to also expect organic to mean a product will not contain dangerously high levels of heavy metals.

74.    The Product is sold to consumers from retail and online stores of third-parties across the country.

75.    Plaintiff bought the Earth's Best Organic Banana Raspberry & Brown Rice Pouch on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, such as Walmart, 13420 W Coal Mine Ave, Littleton, CO 80127, numerous times, including within the last week, for the consumption of children.

76.    Plaintiff bought the Products at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented herein and relied upon what

the label indicated and omitted.

77.   Plaintiff would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.

78.   The Product were worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

79.   Plaintiff intends to, seeks to, and will purchase the Products again when she can do so with the assurance that Products' labeling is consistent with its composition.

Class Allegations

80.   The class will consist of all purchasers of the Products who reside in Colorado and during the applicable statutes of limitations.

81.   Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

82.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

83.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

84.   Plaintiff is an adequate representative because her interests do not conflict with other members.

85.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

86.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

87.   Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

88.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §
6-1-101 et seq.
(Consumer Protection Statutes)

89.    Plaintiff incorporates by reference all preceding paragraphs.

90.    Plaintiff and class members desired to purchase products without high levels of toxic heavy metals.

91.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

92.    Defendant misrepresented the Products through its statements, omissions, ambiguities, half-truths and/or actions.

93.    Defendant intended that Plaintiff and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

94.    Defendant knew or should have known that its representations and omissions about the Product's contents were material and likely to mislead consumers.

95.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

96.    Plaintiff incorporates by reference all preceding paragraphs.

97.    The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

98.    The absence of toxic heavy metals was impliedly warranted because of the numerous

health-related statements.

99.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

100.   This duty is based on Defendant's outsized role in the market for this type of Product.

101.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

102.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Products.

103.   The Products did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

104.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

105.   Plaintiff incorporates by reference all preceding paragraphs.

106.   Defendant had a duty to truthfully represent the Products, which it breached.

107.   This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

108.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

109.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

110.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

111.   Plaintiff incorporates by reference all preceding paragraphs.

112.   Defendant misrepresented and/or omitted the attributes and qualities of the Products.

113.   Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

114.   Defendant was aware of these issues for almost two years yet failed to inform consumers.

115.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

116.   Plaintiff incorporates by reference all preceding paragraphs.

117.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

14

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   February 21, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

15